E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
KATHY YU (Cal. Bar No. 268210)
Assistant United States Attorney
Chief of Ethics and Post-Conviction Review
CHRISTOPHER C. KENDALL (Cal. Bar No. 274365)
Assistant United States Attorney
Deputy Chief, International Narcotics,
  Money Laundering, and Racketeering Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-2431/2576
     Facsimile: (213) 894-0141
     E-mail:    kathy.yu@usdoj.gov
                christopher.kendall@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 22-20(A)-PA |
| Plaintiff, | GOVERNMENT'S RESTITUTION MEMORANDUM; DEFENDANT CONTRERAS' OBJECTIONS |
| v. | |
| LUIS ALFREDO DE LA ROSA RIOS,<br>  aka "Lil J,"<br>  aka "Lil Malo,"<br>ERNESTO CISNEROS,<br>  aka "Gonzo,"<br>  aka "Spooky," and<br>JESSE CONTRERAS,<br>  aka "Skinny Jack,"<br>  aka "Flaco," | SENTENCING HEARING:<br>   July 19, 2024 at 1:30 P.M. |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Kathy Yu and Christopher C. Kendall hereby files its Restitution Memorandum as to defendants Luis Alfredo De La Rosa Rios, Ernesto Cisneros, and Jesse Contreras.

The government's memorandum is based upon the attached memorandum of points and authorities, Exhibits A and B, and any other evidence or argument that the Court may wish to consider at the time of sentencing.

Dated:  July 11, 2024          Respectfully submitted,

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

         /s/ Kathy Yu
_____
KATHY YU
CHRISTOPHER C. KENDALL
Assistant United States Attorneys
Attorneys for Plaintiff
UNITED STATES OF AMERICA

## I. INTRODUCTION

On or about July 13, 2023, defendants LUIS ALFREDO DE LA ROSA RIOS, ERNESTO CISNEROS, and JESSE CONTRERAS pleaded guilty to an Information charging them with racketeering conspiracy, in violation of 18 U.S.C. § 1962(d), which included an Apprendi allegation that each defendant willfully and intentionally committed robbery, and while committing robbery, committed acts that directly caused the death of F.A.  (Dkt. 295, 296, 305 (Rios); (Dkt. 295, 297, 306 (Cisneros); (Dkt. 295, 298, 307 (Contreras).)

In each of their plea agreements, each defendant agreed he would be required to pay "full restitution to the victims of the offense to which he is pleading guilty," as well as any losses suffered by any victims as a result of any "relevant conduct" as defined under United States Sentencing Guidelines Section 1B1.3.  (Dkt. No. 296 at 8 (Rios); Dkt. 297 at 8 (Cisneros); Dkt. 298 at 8 (Contreras).)

All three defendants admitted their roles in the robbery and murder of victim F.A., for which victim A.M. was present.  (Dkt. 296 at 11-12 (Rios); Dkt. 297 at 11-12 (Cisneros); Dkt. 298 at 11-12 (Contreras).)  Defendants Rios and Contreras further admitted they also robbed two other victims, S.A. and J.M.  (Dkt. 296 at 11-12 (Rios); Dk. 298 at 11-12 (Contreras).)

In its original sentencing papers for each of these defendants (Dkt. 341 (Rios), Dkt. 346 (Cisneros), and 314 (Contreras)), the government stated that it would meet and confer with the defense to see if an agreement could be reached as to restitution.

On at least November 15, 2023, November 30, 2023, May 28, 2024, and June 19, 2024, the government notified and followed up with the defense of the following restitution requests, along with

identifying, by bates number, the associated discovery that had been produced previously on or about November 14, 2023.

| Defendants | Victim | Restitution Amount |
|---|---|---|
| Rios Cisneros Contreras | F.A. (payable to the Los Angeles Police Memorial Foundation) | $10,553.85 |
| Rios Cisneros Contreras | J.R. (F.A.'s stepfather) | $18,050.22 |
| Rios Contreras | S.A. | $600 |
| Rios Contreras | J.M. | $2000 |

On June 19, 2024, the government extended a joint restitution agreement to defendants Rios, Cisneros, and Contreras.

In accordance with the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, and the Sentencing Guidelines, the government respectfully requests that the Court enter a restitution order for the full amounts listed in the above table.

**II. DEFENDANT RIOS**

As to defendant Rios, due to counsel conflicts, counsel for defendant Rios notified the government that they would not be able to meaningfully consult[1] with their client until after June 28, 2024. The government reached out again on July 8 (including requesting that counsel submit its own objections for the purposes of this joint filing) and July 10, 2024. On July 11, 2024, defense counsel for Rios stated that they needed additional time to review the issues with defendant Rios and would provide a position to the Court prior to sentencing.

---

[1] As to defendant Rios, the government also sent an individual restitution agreement on December 1, 2023 with these same amounts. The parties have met and conferred on several issues.

4

**III. DEFENDANT CISNEROS**

On or about June 29, 2024, defense counsel for defendant Cisneros signed the stipulated restitution agreement, attached hereto as Exhibit A.

**IV.    DEFENDANT CONTRERAS' OBJECTIONS**

On June 28, 2024, defense counsel for defendant Contreras relayed that defendant Contreras had "rejected" the restitution agreement without any details.  The government and defense counsel for defendant Contreras then met and conferred telephonically on July 1, 2024.

On July 4, 2024, defense counsel for defendant Contreras sent his portion of a joint brief on restitution issues, which is set forth below.

    **A.    LA Police Memorial Foundation**

According to the Foundation's website, found at http://lapmf.org, "The Los Angeles Police Memorial Foundation is a *charitable organization* that provides financial and educational support to the immediate families of all fallen LAPD officers." (emphasis added). On its LinkedIn page, found at https://www.linkedin.com/company/los-angeles-police-memorial-foundation, it describes itself as "LAPMF is a board-governed 501(c)3 non-profit organization, *separate and apart from the LAPD.*" (emphasis added).

For purposes of restitution, the amount to be paid must be to a "victim," which is defined as "a person directly and proximately harmed as a result of the commission of an offence for which restitution may be ordered." 18 U.S.C. §§ 3663, 3663A - 3664; see also U.S.S.G. § 5E1.1, Authors' Discussion, § 4; 18 U.S.C. §

5

3553(a)(7) (the need to provide restitution to "victims" of the offense). The government bears the burden of proving that a person or entity is a victim for purposes of restitution. United States v. Baker, 25 F.3d 1452, 1455 (9th Cir. 1994).

While 18 U.S.C. § 3663A(b)(3) provides that in the case of "an offense involving bodily injury that results in the death of the victim, (the court can order the defendant to) pay an amount equal to the cost of necessary funeral and other services," the recipient must be a "victim" as defined in § 3663A(a)(2). Otherwise, it is not entitled to any reimbursement.

In the present case, the Los Angeles Police Memorial Foundation, which is not part of the Los Angeles Police Department, is not a "victim," because it was not "directly and proximately harmed as a result of the commission" of the offense. Rather, it voluntarily paid for the funeral as an act of charity. It was not required to do so, and any expenditure it incurred was not because it was harmed as a result of the crime, but because in keeping with its charitable purposes it elected to pay those costs. It is no more entitled to recompense than any person who might have chosen to financially help out the deceased's family as an act of charitable giving. Neither is a "victim," as the law requires.

**B.   Stepfather**

The letter from the employer, dated August 11, 2023 (20 months after the incident) states that the stepfather has missed approximately 24 weeks of work "[s]ince 2022." It vaguely states that he takes care of his wife "when she is sick," takes her to doctor's appointments and court appearances" and when "they fly out for LAPD gatherings." Apart from its significant vagueness, it says nothing

6

about 2022, the only year for which the government provided his tax form. (The only exception is a tax form dated January 13, 2022, three days after the incident). The form for the year 2022, dated December 29, 2022, states that he made a base wage of $34,178.85 working 40 hours a week at a rate of $22.04 per hour, equaling $881.60 per week. (This is apart from a few smaller matters, such as overtime and COVID pay). Dividing his base wage by his weekly salary, it appears that he worked 38 weeks. In addition, he was paid $4217.28 in vacation pay, which at the rate of $881.60 per week equals 4.78 weeks of compensated time off. In short, it appears that the government's restitution figures don't add up. The government bears the burden of proving the amount of the loss. 18 U.S.C. § 3664(e). "[T]he government must provide the district court with more than just ... general invoices ... ostensibly identifying the amount of their losses." United States v. Brock-Davis, 504 F.3d 991, 1002 (9th Cir.2007). In short, the government has not proved that the stepfather missed 24 weeks of work for which he was not compensated.

**C.   Victims S.A. and J.M.**

These requested amounts are submitted, although due to the uncertainty regarding the amount taken from S.A., it is proposed that that amount be reduced to $300.

**V.  GOVERNMENT'S RESPONSE TO DEFENDANT CONTRERAS' OBJECTIONS TO THE RESTITUTION AMOUNTS**

The MVRA applies in this case. Restitution is mandatory regardless of a defendant's ability to pay. Under the MVRA, a defendant is required to pay full restitution to the victims of the

offense. Under 18 U.S.C. § 3771(a)(6), a crime victim has the right to full and timely restitution as provided by law.

These losses must be proven by a preponderance of the evidence and the Court must resolve disputes articulating its reasons on the record. See 18 U.S.C. §§ 2248(b)(2), 3664; see also United States v. Tsosie, 639 F.3d 1213, 1220 (9th Cir. 2011).

**A.   Los Angeles Police Memorial Foundation**

Defendant Contreras' sole objection to the restitution request on behalf of the Los Angeles Police Memorial Foundation is that because it was an "charitable organization" obligated to help pay for a fallen officer's funeral, it is, therefore, not entitled to restitution.

Under the MVRA, the victim is entitled to be made whole, which means that the defendant must be ordered to pay for medical and related professional services, physical and occupational therapy and rehabilitation, and any income lost as a result of the offense, as well as any childcare, transportation, or other expenses incurred during participation in the investigation or prosecution of the offense. 18 U.S.C. §§ 3663(A)(b)(2), 3663(A)(b)(4). More specifically, the MVRA includes a provision as it relates to funeral services:

> The order of restitution shall require that such defendant . . . in the case of an offense resulting in bodily injury that results in the death of the victim, pay an amount equal to the cost of necessary funeral and related services.

18 U.S.C. §§ 3663(b)(3).

Tellingly, the provision does not, on its face, appear to limit payment only to the identified "victim" in this case. Moreover, in

8

the case of a victim who is deceased, "the legal guardian of the victim or representative of the victim's estate, another family member, or any other person appointed as suitable by the court, may assume the victim's rights." 18 U.S.C. § 3663A(a)(2). Finally, under 18 U.S.C. 3664(j)(1), "[i]f a victim has received compensation from insurance or any other source with respect to a loss, the court shall order that restitution be paid to the person who provided or is obligated to provide the compensation, but the restitution order shall provide that all restitution of victims required by the order be paid to the victims before any restitution is paid to such a provider of compensation."

These specific provisions, along with the rest of the statutory scheme and applicable caselaw, allow for an order of restitution against the defendants for expenses incurred in connection with F.A.'s funeral by the Los Angeles Police Memorial Foundation. See, e.g., United States v. Cliatt, 338 F.3d 1089, 1090 (9th Cir. 2003) (affirming restitution order under the MVRA to medical center for costs incurred in treating defendant's wife even though she personally incurred no expenses as an active-duty member of the military); United States v. Schmidt, 675 F.3d 1164, 1170 (8th Cir. 2012) (affirming restitution order under the MVRA to South Dakota Medicaid and victim compensation program because victim "suffered a loss in the form of expensive medical treatment," "received compensation for her loss from third parties," and "the court was required to award restitution directly to those third parties in an amount equal to the amount of compensation"); Schmidt, 675 F.3d at 1170 ("The fact that the third parties were [state agencies] does not change the analysis."); United States v. Dungee, 228 F. App'x 298,

300 (4th Cir. 2007) (affirming restitution order to the Bureau of Prisons based on medical care provided to victim and rejecting defendant's argument that because the "BOP was required to provide for [the victim's] medical care," it could not recover costs or expenses).

The law is clear that the Los Angeles Police Memorial Foundation's organizational status is of no moment, so long as it incurred losses, on behalf of the victim, traceable to defendant's conduct – which defendant has not contested. On this factual record and under the applicable law, the Court should overrule defendant's objection and order restitution against defendant Contreras in the amount of $10,553.85, payable to the Los Angeles Police Memorial Foundation.

**B.   Victim J.R. (F.A.'s Stepfather)**

Defendant Contreras takes a narrow view to arrive at the erroneous conclusion that the restitution request for F.A.'s stepfather is "vague[] and unsupported." In addition to supporting documents related to J.R.'s employment (letter from employer and work stubs), the government also produced (1) detailed medical records relating to J.R.'s wife (as in, F.A.'s mother) showing office visits, diagnoses, and prescriptions (see Ex. B (under seal)), and (2) victim impact statements from both F.A.'s stepfather and mom (previously filed under seal).

As set forth in the parental victim impact statements, J.R. documented the devastating emotional, mental, and physical impact the loss of F.A. had on their lives, including the loss of "hearing in [F.A.'s mom's] left ear." He further described that his wife "has had a lot of illnesses since the day that we received the news that

10

my son was no longer alive, but we do have the blessing that we will see him again someday." F.A.'s mom's medical records corroborate these ailments. (Ex. B at 5 (documenting "[s]udden hearing loss," "vertigo," "tinnitus"); id. at 3 (documenting "left sudden hearing loss"). Indeed, given the broad categories of losses covered under 18 U.S.C. § 2248(b)(3) ("medical services relating to physical, psychiatric, or psychological care," "physical and occupational therapy or rehabilitation," "necessary transportation," "lost income," and "any other losses suffered by the victim as a proximate result of the offense"), the government was conservative with the request relating solely to lost wages suffered by F.A.'s stepfather in connection with the murder and loss of his stepson.

Moreover, the law is clear that restitution need not be measured with "mathematical precision." See generally United States v. Doe, 488 F.3d 1154, 1159-60 (9th Cir. 2007). The amount of restitution will be upheld "if the district court is able to estimate, based upon facts in the record, the amount of the [victim's] loss with some reasonable certainty." Id. Here, based on the record (Ex. B at 1-2, Ex. B at 11), the government averaged two "check amounts" from two paystubs (1612.46 + 1395.91 = 1,504.185) multiplied by the number of weeks J.R. missed work according to letter from employer (24 weeks) and then divided that amount by two, resulting in the total of $18,050.22.

On this record, the Court should overrule defendant Contreras' objection and order him to pay $18,050.22 to victim J.R.

**C. Victims S.A. and J.M.**

Defendant Contreras' only objection is to the amount the government has requested on victim S.A.'s behalf ($600), claiming

"uncertainty."

However, defendant Contreras admitted – in his plea agreement and at the change of plea colloquy – that he "removed between $300 and $600, discarded the wallet, and took S.A.'s cell phone and car keys." (Dkt. No. 298 at ¶ 16.) His own admission, therefore, makes the loss amount certain – between $300 and $600. See generally Paroline v. United States, 572 U.S. 434, 459-460 (2014) ("[I]t is neither necessary nor appropriate to prescribe a precise algorithm for determining the proper restitution amount" given that "[t]his cannot be a precise mathematical inquiry and involves the use of discretion and sound judgment"). There needs only be "some reasonable certainty." United States v. Kennedy, 643 F.3d 1251, 1261 (9th Cir. 2011) (citations/quotations omitted).

Moreover, the government's restitution request as it relates to victim S.A. was conservative and reasonable (inuring to defendant Contreras' benefit) as defendant Contreras also admitted he stole victim S.A.'s "wallet," "cell phone," and "car keys." The instant request limited the recovery to only the cash that was taken, versus itemizing each of the items defendant Contreras stole.

In light of defendant Contreras' own admissions, which sets forth the requisite "reasonable certainty," the Court should overrule defendant Contreras' objection and order him to pay $600 to victim S.A.

**VI. CONCLUSION**

For the foregoing reasons, the government respectfully requests that the Court order the defendants to pay restitution as outlined above.